FILED
John E. Triplett, Clerk of Court
United States District Court
By JamesBurrell at 9:49 am, Jul 22, 2024

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | INFORMATION NO. 6:24CR-13 |
| | ) | |
| v. | ) | 18 U.S.C. § 371 |
| | ) | Conspiracy to Tamper with |
| JUSTIN TAYLOR | ) | Monitoring Devices |
| | ) | |
| | ) | 26 U.S.C. § 7206(1) |
| | ) | Fraud and False Statement |
| | ) | |

**THE UNITED STATES ATTORNEY CHARGES THAT:**

## COUNT ONE
*Conspiracy to Tamper with Monitoring Devices*
18 U.S.C. § 371

Beginning at least as early as January 1, 2018, and continuing up to and including January 20, 2021, in Tattnall County, within the Southern District of Georgia, and elsewhere, the defendant,

**JUSTIN TAYLOR,**

did knowingly and intentionally combine, conspire, confederate and agree with others, both known and unknown, to falsify, tamper with, and render inaccurate monitoring devices and methods required to be maintained by the Clean Air Act, in violation of 42 United States Code, Section 7413(c)(2)(C).

## Background Information

Congress enacted the Clean Air Act, 42 U.S.C. § 7401 *et. seq.*, "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). Congress has found that "the increasing use of motor vehicles…has resulted in mounting dangers to the public health and welfare." 42 U.S.C. § 7401(a)(2.)

Congress instructed the Environmental Protection Agency (EPA) to prescribe and revise, by regulation, standards applicable to the emission of air pollutants from vehicles that cause or contribute to air pollution, which may affect public health and welfare.

The Clean Air Act regulates "mobile sources" which include motor vehicles and engines and nonroad vehicles and engines. Pursuant to Title 42, United States Code, Sections 7521, and the regulations promulgated thereunder, the EPA regulates the emissions from various classes of mobile sources by setting standards for the specific pollutants being emitted. Heavy-duty diesel engine vehicles and nonroad diesel engine vehicles are included in such classes and are subject to the emissions regulations found at 40 C.F.R. Part 86 42 U.S.C. § 7521(a)(3).

The standards the EPA established during the charged time period for limiting the emission of air pollutants from heavy-duty diesel engines and nonroad diesel engines applied, and continue to apply to "everyone, including owners, operators, parts manufacturers, and persons performing maintenance.". 40 C.F.R. § 1068(1)(a).

Emission control devices were used during the charged time period, and

continue to be used, to comply with EPA regulations to manage and treat engine exhaust. This reduces the level of pollutants such as nitrogen oxides, particulate matter, carbon monoxide, and non-methane hydrocarbons that are emitted into the air from the tailpipe exhaust and keep the emissions within regulatory limits. For heavy-duty diesel engines and nonroad diesel engines, such emissions control devices include diesel particulate filters (DPF), exhaust gas recirculation (EGR) systems, diesel oxidation catalysts (DOC), and selective catalytic reduction (SCR) systems that are housed in the engine or a section of the vehicle's exhaust system.

These emission control devices are controlled and calibrated by computer software that is incorporated into a vehicle's engine control module. The engine control module is an onboard computer that receives inputs from various sensors and sends outputs through activators to control engine, vehicle, or equipment functions.

Operating within the engine control module is the onboard diagnostic system. The onboard diagnostic system is composed of software and sensors that, among other activities, monitor emissions-related engine systems and components. If an emissions-related malfunction or problem occurs, the onboard diagnostic system causes a malfunction indicator light to be illuminated on the vehicle's dashboard and a diagnostic trouble code to be stored in the onboard diagnostic system's memory. These functions facilitate the detection and diagnosis of a malfunction in the emissions control system. If the malfunction is significant and is not resolved, the onboard diagnostic system may limit the top speed of some vehicles to as low as five miles per hour (known as "limp mode"), or otherwise disable the vehicle, providing an

incentive for the vehicle's operator to seek repairs.

The illegal tampering with and manipulation of emission control systems is commonly known in the industry as "deletion." Deletion often involves two aspects: the physical alteration of the engine related emissions control hardware, such as the DPF, SCR, EGR or DOC, and the software alteration of the code in the electronic control module, including the onboard diagnostic systems.

When the software or "tunes" are downloaded to the engine control module, the software disables the monitoring function of the onboard diagnostic system, prevents the malfunction indicator light from illuminating on the dashboard and prevents a diagnostic trouble code from being stored in the onboard diagnostic system's memory. This serves to conceal the tampering of the emissions controls. It also prevents the vehicle from entering "limp mode" and allows the vehicle to run with increased horsepower and torque and can reduce the costs of maintaining and repairing the emissions control system. This results in significantly increased pollutant emissions released from the vehicle.

## Object of the Conspiracy

The object of the conspiracy was for the Defendant to unjustly enrich himself and others monetarily by tampering with and rendering inaccurate monitoring devices and methods required to be maintained on certain vehicles under the Clean Air Act, including emission control devices for heavy-duty diesel engine vehicles and nonroad heavy-duty diesel engine vehicles.

## Manner and Means of the Conspiracy

It was part of the conspiracy and among its manner and means that, in order to accomplish the object and purpose of the conspiracy, among other things:

a. The Defendant obtained computer hardware and software necessary to alter software on heavy-duty diesel engine vehicles and nonroad diesel vehicles.

b. The Defendant would then arrange to meet with the owners of heavy-duty diesel engine vehicles and nonroad diesel vehicles in order to alter the emission monitoring software on their vehicles.

c. The Defendant would negotiate a fee for providing his illicit services.

d. The Defendant would use computer software to tamper with and render inaccurate the emission control and monitoring systems on heavy-duty diesel engine vehicles and nonroad heavy-duty diesel engine vehicles, also known as "deleting" the emissions control systems.

e. The Defendant on occasion would also physically alter emissions-related hardware components on heavy-duty diesel engine vehicles and nonroad heavy-duty diesel engine vehicles in order to tamper with and disable their emission control systems.

f. In return for his services, the Defendant would collect payment from the owners of the heavy-duty diesel engine vehicles and nonroad heavy-duty diesel engine vehicles.

**Overt Acts**

In furtherance of the conspiracy and to accomplish its objects, the defendant or at least one of his conspirators committed or caused to be committed, in the Southern District of Georgia and elsewhere, at least one of the following overt acts:

a. The Defendant purchased a high-power computer capable of supporting diagnostic equipment for heavy-duty equipment.

b. During the charged time period, the Defendant obtained software (also known as "tunes") capable of deleting, altering, and disabling the emission control and monitoring systems utilized by heavy-duty diesel engines and nonroad heavy-duty diesel equipment, and loaded them onto his computer.

c. On multiple occasions during the charged time period, the Defendant spoke to owners of heavy-duty diesel engine vehicles and nonroad heavy-duty diesel engine vehicles to arrange a time to meet.

d. On multiple occasions during the charged time-period, the Defendant drove to where heavy-duty diesel engine vehicles and heavy-duty nonroad diesel engine equipment was located.

e. On multiple occasions during the charged time-period, the Defendant arranged to have heavy-duty diesel engine vehicles and heavy-duty nonroad diesel engine equipment brought to his shop in Collins, Georgia.

f. On multiple occasions during the charged time-period, the Defendant arranged to have the owner of the heavy-duty diesel engine vehicles and

nonroad heavy-duty diesel engine equipment remove the engine control module, containing the monitoring and diagnostic systems, and bring it to his shop in Collins, Georgia.

g. On multiple occasions during the charged time-period, the Defendant utilized the software on his computer to tamper with and render inaccurate the emission control and monitoring systems on heavy-duty diesel engine vehicles and nonroad heavy-duty diesel engine vehicles, also known as "deleting" the emissions control systems.

All in violation of Title 18, United States Code, Section 371

## COUNT TWO
*Fraud and False Statement*
26 U.S.C. § 7206(1)

That on or about March 20, 2021, in the Southern District of Georgia, the defendant,

**JUSTIN TAYLOR,**

a resident of Collins, Georgia, did willfully make and subscribe and file and caused to be filed with the Internal Revenue Service ("IRS") a false U.S. Individual Income Tax Return, IRS Form 1040, for calendar year 2020, which was verified by a written declaration that it was made under the penalties of perjury and which the Defendant did not believe to be true and correct as to every material matter. That tax return reported that the Defendant's adjusted gross income was $48,889, whereas, as he then and there knew, the Defendant's adjusted gross income was in excess of $400,000.

All in violation of Title 26, United States Code, Section 7206(1).

JILL E. STEINBERG
UNITED STATES ATTORNEY

*/s/ Darron J. Hubbard*

Darron J. Hubbard
Assistant United States Attorney
IL Bar Number 6313078


*/s/ Matthew A. Josephson*

Matthew A. Josephson
Deputy Chief, Criminal Division