**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **CASE NO: 6:24-CR-13** |
| | ) | |
| **JUSTIN TAYLOR** | ) | |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S OBJECTIONS TO THE INITIAL PSI**

NOW COMES the United States of America, by and through Tara M. Lyons, Acting United States Attorney for the Southern District of Georgia, and Assistant United States Attorney Darron J. Hubbard, and responds to the Defendant's objections to the Initial Presentence Investigation Report (Doc. 21). After the resolution conference, only two objections appear to remain: the application of U.S.S.G § 2Q1.2 in Paragraph 19, and the enhancement under § 2Q1.2(b)(1)(A) in Paragraph 20. The government submits that the U.S. Probation Office was correct both in applying § 2Q1.2 and applying the enhancement for repetitive and continuous discharge, and respectfully requests the Court to make those findings at sentencing.

**I.    U.S.S.G. § 2Q1.2 is the Correct Guideline Because the Defendant Stipulated to Causing the Unmitigated Release of Diesel Exhaust**

As noted in U.S.S.G. § 1B1.2, "in the case of a plea agreement (written or made orally on the record) containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline in Chapter Two applicable to the stipulated offense." Thus, despite the defendant's

argument regarding the elements of the offense of conviction, the issue before the Court is the conduct that he stipulated to in his plea agreement.

Here, pursuant to the plea agreement, the defendant has agreed and admitted that on at least 200 occasions, he tampered with the emissions control devices of nonroad diesel engine vehicles and heavy-duty diesel engine vehicles. Doc. 16, page 4. In fact, he stipulated that he "successfully disabled" those systems. Id. Therefore, he has stipulated that at least 200 vehicles released unlimited, unmitigated diesel exhaust into the air for an unknown period of time.

The pertinent question for the Court's determination then, is whether diesel exhaust contains pollutants that are "hazardous" or "toxic" substances, pursuant to U.S.S.G. § 2Q1.2. Note 3 of that Guideline states "this section applies to offenses involving… substances designated toxic or hazardous at the time of the offense by statute or regulation." The government asserts that diesel exhaust contains a myriad of such substances, and that both statute and regulation have made that clear.

While not all the chemicals in diesel exhaust have been specifically designated as "hazardous" or "toxic," the Clean Air Act (CAA) designates it and many of its chemical components as being hazardous substances. Further, pursuant to 42 U.S.C. § 7521(l), the EPA has studied diesel exhaust and released reports and regulations regarding the "hazardous air pollutants" (HAPs) contained therein. Although there is significant crossover, the EPA has also identified other chemical components—and diesel exhaust itself—as being "mobile source-related air toxics" (MSATs). Finally, some of the air pollutants emitted from diesel engine vehicles, including nitrogen

oxides, have been designated by EPA as "hazardous substances" pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9602(a).

### a. Pursuant to the Clean Air Act and Ensuing Regulations, the EPA Has Determined that Diesel Exhaust is a Cancer-Causing Hazardous and Toxic Substance

Pursuant to the Clean Air Act (CAA), Congress directed the EPA to establish a regulatory program for controlling air pollution emitted from mobile sources. 42 U.S.C. Subchapter II. Section 202(a)(1) of the CAA gave EPA the authority and responsibility to set emission standards for "any air pollutant from any class or classes of new motor vehicle engines" that "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C § 7521(a)(1). This authority therefore extends to heavy-duty diesel engines and nonroad diesel engines.

Congress further directed the EPA to study and then set regulatory emission standards "containing reasonable requirements to control hazardous air pollutants from motor vehicles and motor vehicle fuels." Id. at § 7521(l)(1) Congress gave the EPA wide authority to investigate "those categories of emissions that pose the greatest risk to human health…" Id. Congress further required the EPA, after conclusion of the study, to establish emissions standards to control HAPs, including specifically benzene, formaldehyde and other chemicals deemed necessary by the study. Id. at § 7521(l)(2).

Thereafter, the EPA issued regulations on multiple occasions to reduce emissions of HAPs. For example, in 2000, having completed the study called for in 42 U.S.C. § 7521(l)(1), the EPA proposed designation of 21 chemicals and compounds, including diesel exhaust itself, as toxic substances pursuant to Section 7521(l). See 65 Fed. Reg. 48058. The Agency noted that a wide variety of hazardous substances "are emitted from motor vehicles and fuels and are known or suspected to have serious health effects." Id.

The EPA adopted this proposal in 2001. 66 Fed. Reg. 17230 (March 29, 2001); 40 C.F.R. Part 80.  In doing so, the EPA recognized that "[m]otor vehicles are significant contributors to national emissions of several *hazardous* air pollutants, notably benzene, formaldehyde, 1,3-butadiene, acetaldehyde, and diesel particulate matter and diesel exhaust organic gases." 66 Fed. Reg. 17230 (Mar. 29, 2001) (emphasis added).

In 2007, EPA issued additional mobile source air regulations entitled "Final Rule for Control of Hazardous Air Pollutants from Mobile Air Sources." 72 Fed. Reg. 8428 (Feb. 26, 2007).  In adopting the rule, the EPA noted that "[m]obile sources emit air toxics (also known as 'hazardous air pollutants') that can cause cancer and other serious health effects." Id. at 8430. The Agency explained that Section 202(l) of the CAA, 42 U.S.C. § 7521(l), referred to hazardous air pollutants from motor vehicles and fuel. Id. "We use the term 'mobile source air toxics (MSATs)' to refer to compounds that are emitted by mobile sources and have the potential for serious adverse health effects" including cancer.  Id. at 8433.  Within the Final Rule, the EPA explained

some of the adverse health effects caused by MSATs in detail, including among other things, diesel exhaust. Id. at 8435. Specifically, it stated, "diesel exhaust is a mixture of pollutants that collectively poses one of the greatest relative cancer risks when compared with the other individual pollutants assessed." Id. at 8428. Likely for this reason, the same regulation implemented an on-board diagnostic system requirement for heavy-duty diesel engines, to begin implementation in 2010. Id. Of note, these are the very diagnostic and control systems with which the defendant ultimately tampered on hundreds of occasions in this case.

In other words, pursuant to the CAA, exhaust from heavy-duty diesel engines and nonroad diesel engines, like the ones that the defendant stipulated to tampering with on at least 200 occasions, contain hazardous and toxic substances that have harmful effects on the human body. The Court should, therefore, overrule the Defense's objection and determine that U.S.S.G. 2Q1.2 is the appropriate guideline.

### b. Diesel Exhaust Contains Hazardous Air Pollutants and Mobile Source Air Toxics

In February 2006, the EPA published "The Master List of Compounds Emitted by Mobile Sources,"[1] which identified over 1,000 compounds contained in emissions from gasoline and diesel-powered vehicles, including nonroad diesel engines and

---

[1] Env't Prot. Agency, The Master List of Compounds Emitted by Mobile Sources--2006 (2006), available at https://nepis.epa.gov/Exe/ZyPDF.cgi/P1004KHZ.PDF?Dockey=P1004KHZ.PDF (last visited February 10, 2025); see also Env't Prot. Agency, Expanding and Updating the Master List of Compounds Emitted by Mobile Sources--Phase III: Final Report (2006), available at https://nepis.epa.gov/Exe/ZyPDF.cgi/P1004LIZ.PDF?Dockey=P1004LIZ.PDF (last visited February 10, 2025).

5

heavy-duty diesel engines. See Attachment A.

Of these, 59 are listed as HAPs pursuant to 42 U.S.C. § 7412(b)(1). Moreover, 47 of these HAPs are emitted in diesel exhaust, as denoted by an "X" in the column of the chart named "Dsl Exh." See Attachment A. These 47 HAPs are as follows:

| HAP Name | CAS Number |
| --- | --- |
| Formaldehyde | 50000 |
| N-Nitrosomorpholine | 59892 |
| N-Nitrosodimethylamine | 62759 |
| Methanol | 67561 |
| Chloroform | 67663 |
| Benzene | 71432 |
| Methyl chloroform (1,1,1-Trichloroethane) | 71556 |
| Methyl bromide (Bromomethane) | 74839 |
| Acetaldehyde | 75070 |
| Methylene chloride (Dichloromethane) | 75092 |
| Methyl ethyl ketone (2-Butanone) | 78933 |
| Trichloroethylene | 79016 |
| Dibutyl phthalate | 84742 |
| Phthalic anhydride | 85449 |
| Naphthalene | 91203 |
| Biphenyl | 92524 |
| 4-Nitrobiphenyl | 92933 |
| o-Xylenes | 95476 |
| o-Cresol | 95487 |
| Cumene | 98828 |
| Acetophenone | 98862 |
| Ethyl Benzene | 100414 |
| Styrene | 100425 |
| p-Xylenes | 106423 |
| p-Cresol | 106445 |
| Ethylene dibromide (Dibromoethane) | 106934 |
| 1,3-Butadiene | 106990 |
| Acrolein | 107028 |
| Methyl isobutyl ketone (Hexone) | 108101 |
| m-Xylenes | 108383 |
| m-Cresol | 108394 |
| Toluene | 108883 |
| Phenol | 108952 |
| Hexane | 110543 |
| Bis(2-ethylhexl)phthalate (DEHP) | 117817 |

| | |
|---|---|
| Propionaldehyde | 123386 |
| Dibenzofurans | 132649 |
| Cresols/Cresylic acid (isomers and mixture) | 1319773 |
| Methyl tert-butyl ether | 1634044 |
| 2,3,7,8-Tetrachlorodibenzo-p-Dioxin | 1746016 |
| Chlorine | 7782505 |
| Arsenic Compounds | N/A |
| Chromium Compounds | N/A |
| Lead Compounds | N/A |
| Manganese Compounds | N/A |
| Mercury Compounds | N/A |
| Nickel Compounds | N/A |

See 42 U.S.C. § 7412(b)(1), cross-reference Attachment A.[2]

In addition to designating HAPs under Section 112(b)(1), Congress recognized that mobile emissions pose a particular risk to human health. See 42 U.S.C. § 7521(l)(1). As briefly described above, the EPA published a list of 21 MSATs in 2001. See 66 Fed. Reg. 17230, 17235, Table II-1 (Mar. 29, 2001). As relevant here, that list includes the following 19 compounds:

- Acetaldehyde*
- Acrolein*
- Benzene*
- 1,3-Butadiene*
- Diesel Particulate Matter + Diesel Exhaust Organic Gases
- Ethylbenzene*
- Formaldehyde*
- N-Hexane*
- Lead Compounds*
- Naphthalene*
- Nickel Compounds*
- Polycyclic Organic Matter*

---

[2] Note that some of the chemical compounds have differing naming conventions in the statute and the Master List. To alleviate confusion, the EPA utilizes the Chemical Abstract Service (CAS) registry number, which is a unique number used by the scientific community to reference a specific chemical compound. For example, 42 U.S.C. § 7412(b)(1) identifies "methanol" as an HAP, using CAS number 67561. The Master List names the same substance "methyl alcohol," but it shares the same CAS number: 00067-56-1. Each denotes the same chemical compound.

- Styrene*
- Chromium Compounds*
- Dioxin/Furans*
- Manganese Compounds*
- Mercury Compounds*
- Toluene*
- Xylene*

Id.

Of those compounds identified in the Federal Register as MSATS, all those denoted by an asterisk in the preceding paragraph are also identified as HAPs pursuant to statute. The only exception is "diesel exhaust," which is the combination of diesel particulate matter and diesel exhaust organic gases. Diesel exhaust, however, is also a MSAT because it is the combination of the constituent components that makes diesel exhaust itself toxic. As explained by EPA, the "single listing [is] meant to capture the collection of emissions potentially responsible for the cancer and noncancer health effects related to diesel exhaust." 66 Fed. Reg. 17236. Further, "[e]ach of these pollutants are known, probable, or possible human carcinogens… and/or pollutants… We therefore consider each of these compounds to be MSATs." 66 Fed Reg. 17230.

Here, the defendant has stipulated that he disabled the emission controls of nonroad diesel vehicles and heavy-duty diesel vehicles, allowing diesel exhaust from over 200 vehicles to flow freely into the air. As described above, diesel exhaust and its components have been determined to be toxic and hazardous by both law and regulation. Specifically, pursuant to a Congressional directive, the EPA determined that the chemicals that the defendant caused to be released in the are both hazardous

8

air pollutants and mobile source air toxics. Therefore, 2Q1.2 is the correct guideline for the Court to apply.

### c. Diesel Exhaust Components are Hazardous Substances Under the Comprehensive Environmental Response, Compensation, and Liability Act

"Hazardous substance" is defined pursuant to CERCLA to include hazardous and toxic chemicals and compounds regulated by other environmental statutes, including the Clean Water Act, the Clean Air Act, the Resource Conservation and Recovery Act, and the Toxic Substances Control Act. See 42 U.S.C. § 9601(14). Pursuant to 42 U.S.C. § 9602, the EPA has published a regulatory listing of hazardous substances, contained at 40 C.F.R. § 302.4. This list consists of chemicals and compounds designated by EPA as hazardous air pollutants, toxic water pollutants, toxic substances, hazardous waste and other substances. See 40 C.F.R § 302.4.

Specifically, the Act states, "Listed hazardous substances. The elements and compounds and hazardous wastes appearing in table 302.4 are designated as hazardous substances under section 102(a) of the Act." 40 C.F.R. § 302.4(a). Table 302.4 goes on to list, among other chemical compounds, the same 47 hazardous chemical compounds (as identified by CAS number) contained within diesel exhaust, which are described above as HAPs. In addition, the list also contains chemical compounds such as "nitrogen oxide NO," and "nitrogen oxide NO2." Id. The table further includes several non-methane hydrocarbons, such "isoprene," three types of "ethanol," "cyclohexane," and "formaldehyde." Id.

9

That is, the components of diesel exhaust are not only HAPs and MSATs pursuant to the CAA and federal regulation, but they are also "hazardous substances" pursuant to CERCLA. Further, as the defendant stated in his objection, Count 1 includes background information, wherein the government alleged that emissions control devices were used, which "reduce[d] the level of pollutants such as nitrogen oxides, particulate matter, carbon monoxide, and non-methane hydrocarbons." Doc. 1. CERCLA specifically lists some of those chemical compounds as hazardous substances as well. Thus, by pleading guilty to Count 1, the Defendant stipulated to tampering with those same emissions control devices, which resulted in the release of at least 47 "hazardous substances," as described above, as well as nitrogen oxide, and non-methane hydrocarbons, as charged.

Therefore, in addition to the classification as hazardous or toxic substances pursuant to law and regulation described above, because those are identified as hazardous substances pursuant to CERCLA, the Court should find that U.S.S.G. § 2Q1.2 applies.

## II.   The Defendant's Crimes Resulted in an Ongoing, Continuous and Repetitive Discharge of Hazardous and Toxic Substances

The defendant also argues that the U.S. Probation Office incorrectly attributed him a six-level enhancement, pursuant U.S.S.G. § 2Q1.2(b)(1), because according to him, the government cannot demonstrate that the Defendant's tampering with emissions controls systems resulted in a repetitive discharge of hazardous or toxic substances into the environment. As demonstrated above, diesel exhaust is itself a

hazardous and toxic substance, as are its components. The question for the Court, then, is whether the government need conduct "testing," as argued by the Defendant, to prove the repetitive release of diesel exhaust qualifies for the enhancement under the Guideline.

The 11th Circuit has answered this question, holding that the Government need not test the emissions that the Defendant caused to be released into the air: "[t]he government does not have to prove actual environmental contamination in order for the enhancement to apply." United States v. Cunningham, 194 F.3d 1186, 1202 (11th Cir. 1999). "[T]hat is, if the government has demonstrated a discharge, release or emission of a hazardous substance… the government need prove nothing more than that the defendant's conduct fit the language of the guideline." Id. at 1201. See also United States v. Perez, 366 F.3d 1178, 1182 (11th Cir. 2004) (holding similarly with regard to enhancements under U.S.S.G § 2Q1.3).

Further, even the discharge of hazardous or toxic substances on two occasions, without proof of more, is sufficient to support an offense-level increase under U.S.S.G. § 2Q1.2(b)(1)(A).  See United States v. Eidson, 108 F.3d 1336, 1344 (11th Cir. 1997) (citing with approval United States v. Catucci, 55 F.3d 15, 18 (1st Cir.1995) (holding that two discharges on separate days sufficient to support increase under § 2Q1.2(b)(1)(A)); United States v. Strandquist, 993 F.2d 395, 401 (4th Cir.1993) (two separate incidents sufficient to support upward adjustment under analogous provision of § 2Q1.3(b)(1)(A)).

11

Here, the defendant stipulated to, on at least 200 occasions, "successfully disabling and circumventing the emission control systems" of heavy-duty diesel engines and nonroad diesel engines. Because this caused the discharge of diesel exhaust, a hazardous substance, into the air on those occasions, the government need not prove actual contamination through testing. That is, the defendant's conduct fits the guideline.

The government, however, stands ready to call special agents with the EPA-CID to testify about their investigation if need be. If called, they will testify that they interviewed "customers" of the Defendant, who admitted to disabling the emissions control system of their heavy-duty or nonroad diesel engines, which resulted in the unmitigated discharge of diesel exhaust into the air. In some circumstances, the nonroad diesel vehicles were the property of logging companies, who utilized the deleted machines nearly continuously. In some circumstances, this continuous discharge lasted for several years. They will further testify that, having reviewed the financial information of the Defendant and the checks written to him during the conspiracy, it is quite likely that many other logging and trucking companies for whom Mr. Taylor deleted emissions control software likely did the same.

Diesel exhaust and its component chemicals are hazardous and toxic substances pursuant to law and regulation. The defendant stipulated to causing the release of that substance in a repetitive and continuous manner. The enhancement of six levels under U.S.S.G. § 2Q.1(b)(1) is appropriate and should not be reduced pursuant to Note 5 of that Guideline. The Court should overrule the Defendant's

12

objection and find that the defendant's Guidelines were properly calculated.

## III. Conclusion

The government submits its response to the Defense's Objections (Doc. 21) for the Court's and the U.S. Probation Office's consideration in calculating the Guidelines.

Respectfully submitted,

TARA M. LYONS
ACTING UNITED STATES ATTORNEY

*/s/ Darron J. Hubbard*

Darron J. Hubbard
Assistant United States Attorney
IL Bar Number 6313078

Post Office Box 8970
Savannah, GA 31412
Telephone Number: 912-652-4422

## **CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

This 11th day of February, 2025.

                              Respectfully submitted,

                              TARA M. LYONS
                              ACTING UNITED STATES ATTORNEY

                              ***/s/ Darron J. Hubbard***

                              Darron J. Hubbard
                              Assistant United States Attorney
                              IL Bar Number 6313078

Post Office Box 8970
Savannah, GA 31412
Telephone Number: 912-652-4422